IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

NEWLIFE SCIENCES LLC, JOHN CROSSON, and C. READ MCLEAN,

    Plaintiffs,

    v.

LANDMARK AMERICAN INSURANCE COMPANY, a corporation,

    Defendant.

No. C 13-05145 RS

**AMENDED ORDER DENYING MOTION TO DISMISS**

## I. INTRODUCTION

In 2008, medical device company NewLife Sciences LLC ("NewLife") filed suit in Los Angeles Superior Court against two individuals who, in turn, filed a counter-claim against NewLife and two of its executives ("plaintiffs"). Plaintiffs tendered their defense to their insurer, Landmark American Insurance Company ("Landmark"), which declined to defend the underlying suit. Plaintiffs in turn filed this suit, alleging breach of contract, tortious breach of the implied covenant of good faith and fair dealing, and violation of the California Business and Professions Code.

Landmark moves to dismiss, arguing the applicable policies are "claims made and reported" policies that do not apply if, as in this case, the insured fails to report the claim to the

insurer within the policy's grace period.  Plaintiffs counter that the policy is more accurately a "claims made" policy, and that the reporting requirement is only a condition of coverage; therefore, Landmark must allege prejudice arising from plaintiffs' failure to comply with that provision.  Pursuant to Civil Local Rule 7-1(b), defendant's motion to dismiss is suitable for disposition without oral argument, and the hearing set for February 20, 2014, is vacated.  For the reasons set forth in the following discussion, Landmark's motion to dismiss must be denied.

## II. LEGAL STANDARD

To survive a 12(b)(6) motion to dismiss for failure to state a claim, the complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  "Pleadings must be so construed so as to do justice." Fed. R. Civ. P. 8(e).  While "detailed factual allegations are not required," a complaint must have sufficient factual allegations to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  This determination is a context-specific task requiring the court "to draw on its judicial experience and common sense." *Id.* at 679.

## III. FACTUAL BACKGROUND[1]

NewLife manufactures and markets medical equipment.  At all relevant times in this action, NewLife, its president and CEO John Crosson, and its CFO C. Read McLean (collectively, "plaintiffs") were covered by a professional liability insurance policy issued by Landmark.  For purposes of this suit, the relevant coverage provisions are the Commercial General Liability Coverage Form – Claims Made (the "08/09 Policy"), which covers the policy period from July 17, 2008 to July 17, 2009, and the Commercial General Liability Coverage Form – Claims Made of the third policy (the "09/10 Policy"), which covers the policy period

---

[1] All factual allegations from the complaint are taken as true for purposes of this motion to dismiss.

No. 13-cv-05145 RS
ORDER DENYING MOTION TO DISMISS

2

from July 17, 2009 to July 17, 2010.  The two policies are identical in all aspects relevant to this case.

The policies at issue here each include a face page identifying them as "Professional Liability Insurance."  The next page states, "Commercial Lines Combination Policy Declarations" and states there are two coverage parts: "Commercial General Liability Coverage Form—Claims Made" and "Medical Professional Liability Coverage Part—Claim Made Basis."  This suit implicates the first category of coverage for commercial general liability.  The relevant insuring agreement clause provides, "[Landmark] will pay those sums that the insured becomes legally obligated to pay as damages because of 'personal and advertising injury' to which this insurance applies.  We will have the right and duty to defend the insured against any 'suit' seeking those damages."  (Exh. 4, at 14.)  Subparagraph b. of the insuring agreement clause goes on to state:

> This insurance applies to "personal and advertising injury" caused by an offense arising out of your business, but only if:
>
> (1) The offense was committed in the "coverage territory";
>
> (2) The offense was not committed before the Retroactive Date, if any, shown in the Declarations or after the end of the policy period; and
>
> (3) A claim for damages because of the "personal and advertising injury" is first made against any insured, in accordance with Paragraph c. below, during the policy period or any Extended Reporting Period we provided under Section V—Extended Reporting Periods.

(*Id.*)  Subparagraph c. of the insuring agreement clause states in pertinent part, "A claim made by a person or organization seeking damages will be deemed to have been made at the earlier of the following times: (1) When notice of such claim is received and recorded by any insured or by us, whichever comes first . . . ."  (*Id.*)  At this juncture, it is undisputed that the allegations of the underlying complaint fall within the ambit of "personal and advertising injury."

The insuring agreement is followed by a series of exclusionary provisions, none of which is at issue here.  The exclusionary provisions are then followed by several "commercial general

liability conditions." Subparagraph b. provides: "If a claim is received by any insured, you must . . . (2) Notify [Landmark] as soon as practicable, but in no event later than 30 days after the Policy Period. You must see to it that [Landmark] receive[s] written notice of the claim as soon as practicable." As plaintiffs allege, this provision can be found only on page 15 of a 57 page policy in font that is small, not bold or underlined. This provision is not contained in the insuring agreement clause of the policy. (Complaint ¶ 19.)

In 2008, NewLife filed suit against Ronald J. Weinstock and Susan Svatik in the Los Angeles Superior Court alleging fraud and seeking injunctive relief. The substance of that lawsuit is not at issue here. In response, Weinstock, Svatik, Malta Resources, LLC, and Medico Enterprises LTD filed a cross-complaint alleging various causes of action including fraud, rescission, breach of contract, and other causes of action. On November 3, 2008, plaintiffs were served with a first amended cross-complaint alleging that plaintiffs interfered with the cross-complainants' existing and prospective economic and business advantage and engaged in common law unfair competition by, among other things, "disparaging and making derogatory statements." According to plaintiffs, the first amended cross-complaint triggered Landmark's duty to defend under its professional liability insurance policy.

Plaintiffs tendered the defense of the cross-complaint to Landmark on or about November 4, 2009. By letter dated December 22, 2009, Landmark denied it had any obligation to defend because the claim was first reported to the insurer more than thirty days after the expiration of the relevant policy.

In May 2012, Weinstock, Medico, and Malta filed a second amended cross-complaint against plaintiffs as part of the continuing litigation in the underlying action. Cross-complainants continued to allege that plaintiffs "have engaged in a campaign to undermine Weinstock, Medico, and Malta in the business community, and disparage and damage their reputations and good will." They further alleged that plaintiffs "have engaged in acts and conduct designed and intended to deter individuals and entities from associating or doing business with Weinstock."

Plaintiffs re-tendered the defense of the cross-complaint to Landmark in December 2012 and asked it to reconsider its coverage position. By letter dated January 17, 2003, Landmark again denied plaintiffs' tender and refused to defend. The parties' counsel exchanged additional emails, but Landmark did not change its position.

While plaintiffs deny the allegations of the Cross-Complaint, they allege here that they have been required to expend and continue to expend large sums of money to defend themselves. They in turn have sued Landmark, alleging (1) breach of contract, based on Landmark's refusal to defend plaintiffs against the underlying cross-complaint; (2) tortious breach of the implied covenant of good faith and fair dealing; and (3) violation of the California Unfair Competition Law ("UCL"), Business and Professions Code § 17200 et seq., for failure to provide adequate notice of a "claims made" policy as required by California Insurance Code § 11580.01.

## IV. DISCUSSION

*A. Breach of Contract*

Plaintiff's first claim alleges Landmark breached its contractual duty to defend and indemnify. Under California Law, a duty to defend lies only where the facts alleged against the insured, or otherwise made known to the insurer, create a potential for covered liability. "This duty, which applies even to claims that are 'groundless, false, or fraudulent,' is separate from and broader than the insurer's duty to indemnify." *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 19 (1995) (citations omitted). "It extends beyond claims that are actually covered to those that are merely potentially so—but no further." *Buss v. Superior Court*, 16 Cal. 4th 35, 46. Although "basic coverage provisions are construed broadly in favor of affording protection, . . . clauses setting forth specific exclusions from coverage are interpreted narrowly against the insurer." *Minkler v. Safeco Ins. Co. of Am.*, 49 Cal. 4th 315, 322 (2010). The duty is on the insured to show the claims are encompassed within the basic coverage provisions but on the insurer to show whether any exclusions apply. *Id.* Nothing more is required than "a bare 'potential' or 'possibility' of coverage" to trigger a duty to defend. *Montrose Chem. Corp. v. Superior Court*, 6 Cal. 4th 287 (1993).

No. 13-CV-05145 RS
ORDER DENYING MOTION TO DISMISS

5

When interpreting an insurance contract, the burden is on the insured in the first instance to bring the claim within the basic scope of coverage defined by the insuring agreement. *Waller*, 11 Cal. 4th at 16. It is then left to the insurer to prove that its coverage obligations are excused either by operation of the policy's exclusionary terms, *Minkler*, 49 Cal. 4th at 322, or other affirmative defense. When the insurer's affirmative defense is that the insured failed to comply with one or more policy conditions, the insurer must also show prejudice. "An insurer may assert defenses based upon a breach by the insured of a condition of the policy," such as a notice requirement, "but the breach cannot be a valid defense unless the insurer was substantially prejudiced thereby." *Campbell v. Allstate Ins. Co.*, 60 Cal. 2d 303, 305 (1963).

Professional liability insurance generally falls into one of two categories: "occurrence" policies and "claims made" policies. In the former, an insurer's obligations are triggered when a covered occurrence takes place during the policy period. In the latter, the insurer's obligations are triggered when a covered claim is made against the insured during the policy period. "Claims made" policies developed as a means for insurers to "reduce their exposure to an unpredictable and lengthy 'tail' of lawsuits," in turn making insurance more available and less expensive to the insured when compared to traditional "occurrence" policies. *KPFF, Inc. v. California Union Ins. Co.*, 56 Cal. App. 4th 963, 972 (1997). The concept of "claims made" policies has been further extended by a type of policy in which the insuring agreement specifically limits the insurer's obligations to "claims made and reported" during the policy period. In such policies, "[t]imely reporting of the claim is thus the event triggering coverage." *Id.* These policies "are essentially reporting policies." *Pac. Employers Ins. Co. v. Superior Court*, 221 Cal. App. 3d 1348, 1358 (1990). The reporting requirement in a "claims made and reported" policy is, thus, not a condition of coverage but part of the coverage definition itself. Whereas an insurer bears the burden to show it was prejudiced by the insured's failure to comply with a reporting condition, it is the insured that bears the burden to show the claim was timely reported in a "claims made and reported" policy.

As recounted above, the policies at issue are titled "claims made" policies (Exh. 4, at 3), in which the insuring agreement limits coverage to claims made against the insured during the policy period or any extended reporting periods provided for by the policy. (*Id.*, at 14.) The policies also include as a condition of coverage that the insured report all claims to the insurer no later than 30 days from the close of the policy period. According to Landmark, this condition transforms each policy into a "claims made and reported" policy because all conditions of coverage are incorporated into the insuring agreement itself by a separate clause that states, "[Landmark] will pay those sums that the Insured becomes legally obligated to pay as damages because of 'personal and advertising injury' *to which this insurance applies*." (Exh. 4, at 14 (emphasis added).) Landmark, however, provides no authority for the proposition that such a statement should transform each condition of coverage—and presumably, each exclusionary provision—into a term of the basic insuring agreement. Such a reading would defeat the interpretive rules discussed above, in which the onus is on the insured to prove a claim falls within the basic scope of insurance and on the insurer to prove any exclusions or conditions apply. "Although it is a well-established principle that an insurer has the right to limit policy coverage, it is also the rule that any limitation of coverage must conform to the law and public policy." *Pac. Employers Ins.*, 221 Cal. App. 3d at 1359.

Plaintiffs were served with three separate cross-complaints in the underlying action: the original cross-complaint served on June 25, 2008 (a date covered by the 07/08 Policy), the first amended cross-complaint filed on November 3, 2008 (a date covered by the 08/09 Policy), and the second amended cross-complaint (filed May 25, 2012). According to plaintiffs, it was the first amended cross-complaint that "[f]or the first time" asserted claims cognizable under the policy's coverage for personal and advertising injury liability. (Complaint, ¶ 14.) Plaintiffs therefore seek to enforce Landmark's duties to defend and indemnify under the 08/09 Policy for a claim made against them during the policy period. (*Id.*, ¶ 17.) Nothing more appears necessary at this stage for plaintiffs to meet their burden to explain how the claim falls within the basic coverage of that policy.

1   Landmark suggests the original cross-complaint put plaintiffs on notice of the underlying
2   claims against them during the 07/08 Policy.  It is not necessary, however, to determine at this
3   stage whether the claim was "made" against plaintiffs during the 07/08 Policy or the 08/09
4   Policy as it is Landmark's primary position that plaintiffs did not report the claim to Landmark
5   until November 2009, more than 30 days after expiration of both the 07/08 Policy (on July 17,
6   2008) and the 08/09 Policy (on July 17, 2009).  Landmark argues it therefore had no duty to
7   defend or indemnify under either policy.  Landmark, however, makes no attempt in this motion
8   to show that it was prejudiced by plaintiffs' failure to report their claim in a timely fashion.  Its
9   motion to dismiss must therefore be denied as to Claim I.

*B. Implied Covenant of Good Faith and Fair Dealing*

Plaintiffs' second claim alleges Landmark breached the implied covenant of good faith and fair dealing by unreasonably refusing to defend plaintiffs in the underlying claim when it knew it had a duty to do so under its personal and advertising injury coverage.  In response, Landmark argues, first, that the complaint falls outside of the applicable statute of limitations and, second, that plaintiffs fail to allege sufficient facts to support this claim.

The applicable statute of limitations for a claim of breach of the covenant of good faith and fair dealing is two years.  Code Civ. Proc., § 339(1); *Smyth v. USAA Property & Casualty Ins. Co.*, 5 Cal.App.4th 1470, 1477 (1992).  By letter dated December 22, 2009, Landmark denied coverage for the claim based on the first amended cross-complaint.   Landmark apparently concedes that the statute of limitations was tolled when plaintiffs tendered their defense to Landmark under the general policy articulated by the California Supreme Court in a case concerning title insurance:

> The protection provided pursuant to a policy of title insurance would ring resoundingly hollow were the holder compelled to simultaneously enforce rights under the policy and defend a costly and potentially devastating claim against the subject property.  Thus, we recognize the justice and fairness of equitably tolling the insured's action to establish coverage until resolution of the underlying claim.

*Lambert v. Commonwealth Land Title Ins. Co.*, 53 Cal. 3d 1072, 1081 (1991). It is therefore not necessary to address this issue further.

Landmark in addition contends the "genuine dispute" doctrine bars plaintiffs' bad faith claims. In order to prevail, plaintiffs must ultimately prove Landmark's denial of coverage was both erroneous and unreasonable. *Opsal v. United Services Auto. Assn.*, 2 Cal. App. 4th 1197, 1205 (1991). At this stage, however, they need only assert sufficient factual allegations to "state a claim to relief that is plausible on its face." *Ashcroft*, 566 U.S. at 678. Plaintiffs allege Landmark "knew it had a duty to defend under its personal and advertising injury coverage," yet failed to do so despite plaintiffs' repeated requests. (Complaint, ¶ 33.) Landmark may have believed its duties were excused because plaintiffs provided notice to Landmark after the close of the reporting period for that policy, but that is a factual determination not amenable to resolution on a motion to dismiss. Landmark's motion to dismiss is therefore denied as to Claim II.

### C. California UCL Claim

Plaintiffs third claim alleges Landmark's policies do not comply with California Insurance Code § 11580.01, and as such, Landmark has engaged in "unfair, unlawful and/or fraudulent business acts and practices" in violation of the Unfair Competition Law, Cal. Bus. & Prof. Code §17200, *et seq*. ("UCL"). (Complaint, ¶¶ 40–42.) Landmark argues that plaintiffs lack standing to sue for violation of the UCL because Landmark substantially complied with this provision of the Insurance Code and therefore plaintiffs cannot show they suffered an "injury in fact." Cal. Bus. & Prof. Code § 17204.

Section 11580.01 requires that a "claims made" policy "shall contain on the face page thereof a prominent and conspicuous legend or statement substantially to the following effect:

NOTICE

"Except to such extent as may otherwise be provided herein, the coverage of this policy is limited generally to liability for only those claims that are first made against the insured while the policy is in force. Please review the policy carefully and discuss the coverage thereunder with your insurance agent or broker."

§ 11580.01(c). According to Landmark, each of the policies at issue here indicates on the first page of the declarations that the commercial general liability part was a "Claims Made" policy (Exh. 4, at 3 (second page of the policy)) while the second page of the declarations contains the requisite "Notice" provision with only minor variations (*Id.*, at 4 (third page of the policy)). In support, Landmark invokes instances in which a court granted summary judgment on the theory that similar disclosures substantially complied with the § 11580.01. *Mt. Hawley Ins. Co. v. Federal Sav. & Loan Ins. Corp.,* 695 F. Supp. 469, 481 (C.D. Cal. 1987).

Plaintiffs counter that these disclosures, appearing on pages two and three, respectively, of the policy documents do not "substantially comply" with the statutory requirement that notice be given "on the face page" of the policy. § 11580.01(c). Whether or not this disclosure "substantially complied" with the requirements of § 11580.01(c) and whether plaintiffs suffered an "injury in fact" are factual determinations not appropriate for a motion to dismiss. It is sufficient at this stage that plaintiffs allege the policies did not comply with these disclosure requirements by not including the required notice on the "face page" of the policy and that they therefore suffered financial injury by paying to defend themselves after Landmark declined their defense.

For the first time on reply, Landmark also argues it is not subject to California Insurance Code § 11580.01 because it is a "nonadmitted insurer" and therefore not subject to California financial solvency regulations. Even if this argument were properly presented as an affirmative defense, Landmark has not met its burden to show, as a matter of law on a pleading motion, that it is exempt from § 11580.01 as an out-of-state carrier.

## V.  CONCLUSION

For the forgoing reasons, defendants' motion to dismiss is denied.

IT IS SO ORDERED.

DATED: February 18, 2014

_____
RICHARD SEEBORG
United States District Judge

No. 13-cv-05145 RS
ORDER DENYING MOTION TO DISMISS

10